**Charles L. ROEDER, Plaintiff,**

**v.**

**CHEMREX INC. and UNUM Life Insurance Company of America, Defendants.**

**No. 93–C–1411.**

United States District Court, E.D. Wisconsin.

Sept. 8, 1994.

Robert E. Wrenn, J. Douglas Fitzgerald Gibbs, Roper, Loots & Williams, Milwaukee, WI, for plaintiff.

John D. Finerty, Jr., Krukowski & Costello, Mary K. Braza, Foley & Lardner, Milwaukee, WI, for defendants.

## DECISION AND ORDER

CURRAN, District Judge.

Charles Roeder, former Chief Operating Officer of Defendant ChemRex Inc., is suing ChemRex and UNUM Life Insurance Company for breach of contract and fiduciary duty; and for a clarification of his right to benefits under a long term disability policy. After Roeder commenced this action in the Circuit Court of Ozaukee County (Wisconsin), ChemRex removed the case to federal court on the basis of federal question jurisdiction.[1] *See* 28 U.S.C. §§ 1441 & 1446. In its removal petition, ChemRex argued that the Employee Retirement Income Security Act of 1974 (ERISA), 28 U.S.C. §§ 1061–1461, preempts Roeder's state law claim. Although Roeder continued to maintain his state law claim, he did not object to removal. After the case reached this court, Roeder amended his complaint to add UNUM as a party Defendant. UNUM issued the long term disability policy which is at issue in this case.

After a period of discovery, all parties moved for summary judgment on the grounds that there are no material facts in dispute and that they are entitled to judgment as a matter of law. *See* Federal Rule of Civil Procedure 56. These motions are now fully briefed and ready for decision.

## I. FACTS

According to the undisputed facts in the record,[2] Plaintiff Charles Roeder began his

---

1. *See* 28 U.S.C. § 1331 and 29 U.S.C. § 1303.

2. *See* Affidavit of Charles L. Roeder (filed July 1, 1994).

employment with ChemRex in 1959. At that time ChemRex, a manufacturer of commercial and industrial adhesives, was a division of Rexnord, Inc. Eventually, Roeder became President of the company, which was subsequently acquired by a German corporation, SKW Trostberg AG. SKW entered into an employment agreement with Roeder on January 1, 1989. Under this agreement Roeder agreed to serve as President, Chief Operating Officer and a member of the Board of Directors of ChemRex Inc., as well as on the board of directors of several related companies. As part of his compensation, Roeder had a right to participate in employee welfare benefit plans such as the long term disability plan at issue in this case. By its terms, the 1989 employment agreement was to be in effect until December 31, 1991, and could be renewed. However, on September 24, 1991, Dieter Poech, an officer of the parent company, asked Roeder to resign. A severance agreement was negotiated and Roeder did resign. Roeder contends that, while he resigned all his offices, he remained a ChemRex employee under the terms of the 1989 employment agreement. ChemRex, on the other hand, maintains that Roeder's employment terminated with the signing of the 1991 agreement.

In November of 1992, Roeder injured his back while working in his yard. On May 13, 1993, he applied to ChemRex for long term disability benefits under the UNUM policy. ChemRex refused to provide Roeder with application forms, stating that he was not eligible for benefits under the policy because he was no longer an employee and was not actively working for the company when he became disabled. Roeder then commenced this lawsuit.

## II. *LEGAL STANDARDS FOR SUMMARY JUDGMENT*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

As the Supreme Court has noted, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corporation v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986) (quoting Federal Rule of Civil Procedure 1) (citation omitted).

■ The court must first look to the substantive law governing the case to determine which facts are material. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In this case the controlling substantive law is found in the federal Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1061–1461.

■ An issue of fact is "genuine" if the evidence is significantly probative or more than merely colorable such that a finder of fact could reasonably grant judgment for the party having the burden of proof. *See Id.* at 248, 106 S.Ct. at 2510. At this stage, "the judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. at 2510.

■ The party seeking summary judgment always bears the initial burden of informing the court of the basis for its motion. *See Celotex v. Catrett,* 477 U.S. at 323, 106 S.Ct. at 2553. The burden on the moving party will be "discharged by 'showing'—that is, pointing out to the court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554. The burden then shifts to the nonmoving party to show that there is a genuine issue of fact for trial. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. In considering a motion for summary judgment, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. However, in resisting a mo-

tion for summary judgment, the nonmoving party may not rely upon mere allegations or denials contained in pleadings or briefs.

When the moving party does not have the burden of proof at trial, the moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing of an essential element of the case. *See Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. When the moving party bears the ultimate burden of proof on an issue, it meets its burden by showing sufficient evidence to justify a judgment in its favor. This inquiry implicates the substantive evidentiary standard of proof that would apply at a trial on the merits.

## III. *DISCUSSION AND DECISION*

### A. PREEMPTION

As a threshold matter, Defendant Chemrex has asked the court to determine whether Roeder's state law breach of contract and fiduciary duty claim is preempted by ERISA. In his Amended Complaint, Roeder alleges that Chemrex breached both the 1989 employment agreement and the 1991 resignation agreement when it refused to let him apply for long term disability benefits under the UNUM policy. Roeder contends that ChemRex breached its duty of good faith inherent in these contracts and asks for compensatory and punitive damages for the breach.

In moving to dismiss the state law claim, ChemRex argues that the federal ERISA statutes preempt Roeder's breach of contract and fiduciary duty claim because the claim "relates to" the UNUM long term disability plan, which all parties agree is an ERISA welfare benefit plan.

Section 514(a) of ERISA provides that:

Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

29 U.S.C. § 1144(a). The phrase "relates to" contained in this statute has been given a broad interpretation by the courts so as to preempt any and all state statutes that reference or are in connection to an employee welfare benefit plan. *See Pilot Life Insurance Company v. Dedeaux*, 481 U.S. 41, 47, 107 S.Ct. 1549, 1552, 95 L.Ed.2d 39 (1989). ERISA also preempts claims based upon common law. *See Ingersoll Rand Company v. McClendon*, 498 U.S. 133, 137–45, 111 S.Ct. 478, 482–86, 112 L.Ed.2d 474 (1990); *Thompson v. Aetna Life Insurance Company*, 9 F.3d 645, 646 (7th Cir.1993).

Despite this body of law, Roeder argues that:

ChemRex has moved to dismiss Roeder's state law claims on the expressed premise that if you ignore the issue of Roeder's employment entirely, nothing remains but claims related to ERISA. However, Roeder disputes ChemRex's repudiation of the parties' 1989 Employment Agreement (the "1989 Agreement") and subsequent September 24, 1991 contract (the "1991 Agreement").

Roeder's complaint asserts two separate claims: (1) breach of contract and breach of fiduciary duty under state law for ChemRex's refusal to perform under the 1989 and 1991 Agreements by refusing to acknowledge Roeder as an employee during 1992, and (2) for determination of his ERISA rights under ChemRex's Long Term Disability Plan were he permitted to properly request benefits. The question of Roeder's employment status and ChemRex's breach of the 1989 and 1991 Agreements are plainly state law claims unrelated to ERISA. Accordingly, Roeder is entitled to a jury trial on those issues together with compensatory damages and punitive damages.

. . . .

Roeder's contract claims present an independent threshold issue which requires adjudication before the plan or its terms become relevant. . . . However, Roeder's complaint asserts a claim for breach of the 1989 and 1991 Agreements based upon ChemRex's refusal to acknowledge that Roeder was an employee during 1992. It

is impossible to disregard these claims concerning his employment status and deny Roeder's right to pursue them under state law.

Memorandum in Opposition to Defendant's Motion to Dismiss and Motion to Strike Jury Demand and Request for Compensatory and Punitive Damages at 1–2 (citations omitted).

Besides the compensatory and punitive damages for his state law claims, Roeder is seeking equitable relief under that provision of the ERISA civil enforcement statue which provides that:

A civil action may be brought—

(1) by a participant or beneficiary—

. . . .

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

29 U.S.C. § 1132(a)(1)(B).

This subsection specifies that only "participants" or "beneficiaries" have standing to claim benefits under an ERISA plan. Roeder claims to be a "participant," which ERISA defines as follows:

The term "participant" means any employee or former employee of an employer, or any member of former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C.A. § 1002(7) (West Supp.1994).

 In this case, Roeder wants the court to rule that he is eligible to apply for long term disability benefits based upon his theory that he was an employee of ChemRex and was covered by its UNUM plan when he became disabled in November of 1992.

Thus, the dispositive threshold question in this case is whether Roeder is a "participant" in the long term disability plan. Despite the Plaintiff's attempt to frame this issue as two separable claims,[3] it is obvious that the breach of contract and fiduciary duty claims substantially overlap with the ERISA claim. This is not a case in which a state law claim is not found to be preempted because ERISA plan benefits are merely included in the complaint as an item of damages. *See, e.g., Seehawer v. Magnecraft Electric Company,* 714 F.Supp. 910 (N.D.Ill.1989). The single loss Roeder alleges to have suffered is denial of the long term disability benefits. He is not seeking to recover or enforce other rights or duties under the contracts. The factual basis of the Amended Complaint involves a would-be employee and an employer benefit plan. The breach of contract and loss of ERISA benefits alleged were contemporaneous events typing the ERISA and contract claims. The connection of the breach of contract claim to the ERISA claim is not "too tenuous, remote or peripheral." *See Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 99, 103 S.Ct. 2890, 2901, 77 L.Ed.2d 490 (1983). Therefore, because a judgment in this case would affect relations among the principal ERISA entities—the employer, the plan, and the would-be participant—the court concludes that ERISA preempts Roeder's state law breach of contract and fiduciary duty claim.

 If Roeder prevails, ERISA only allows an award of equitable relief—a clarification of his right to past or future benefits. Therefore, he cannot seek compensatory or punitive damages. *See generally Massachusetts Mutual Life Insurance Company v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). Roeder's claim for relief being equitable in nature, a jury trial is also

---

**3.** The Plaintiff did not oppose removal of this case from state court on the ground that, until the threshold question (whether Roeder was an employee of ChemRex when he became disabled) was answered, removal was premature. *Cf. Fulk v. Hartford Life Insurance Company,* 839 F.Supp. 1181, 1186–87 (M.D.N.C.1993); *Deller v. Portland General Electric Company,* 734 F.Supp. 916,

918 (D.Or.1990). Only federal question jurisdiction was alleged by ChemRex as a basis for removal. Diversity jurisdiction was not alleged as a basis for removal, and cannot be proposed as a basis after removal. *See Shaver v. F.W. Woolworth Company,* 840 F.2d 1361, 1363–64 & n. 1 (7th Cir.), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988).

precluded under ERISA.[4] *See Bugher v. Feightner,* 722 F.2d 1356, 1358 (7th Cir.1983), *cert. denied,* 469 U.S. 822, 105 S.Ct. 98, 83 L.Ed.2d 43 (1984); *Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820, 829–30 (7th Cir.1980), *cert. denied,* 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981).

## B. STANDARD OF REVIEW

Having decided that Roeder's sole avenue of relief is under ERISA, the court must now address the issue of whether Roeder is eligible for benefits under the UNUM plan. ChemRex, as the administrator of the UNUM disability plan, denied Roeder's request. On May 18, 1993, Richard Aschenbrenner, ChemRex's Chief Financial Officer and Treasurer, answered Roeder's May 13, 1993, "notice of claim" and request for claim forms as follows:

Dear Chuck,

Randy Olson passed on your letter regarding your current medical condition and your request for LTD forms. I am sorry to hear about your slow recovery.

Chuck, I'm very sorry to inform you that you are not eligible for LTD benefits. I've enclosed copies of pages from the LTD policy describing eligibility:

Section IV—Benefits—

• "When the Company receives proof that the *insured* is disabled...." The question is ... Who is insured?

Section II—Definitions

• "Insured" means an *employee* insured under this policy.

• "Employee" means a person in *active employment* with the employer.

• "Active employment" means the employee must be working:

1. For the employee on a full-time basis and paid regular earnings.

If you have any questions please contact me.

Sincerely yours,

Dick Aschenbrenner

Affidavit of Charles L. Roeder at Exhibit F (filed July 1, 1994).

Before the court can consider addressing the merits of the substantive issues, it must determine what degree of deference should be paid to the administrator's decision.

In *Firestone Tire and Rubber Company v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the United States Supreme Court held that "a denial of benefits challenged under [29 U.S.C.] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. at 956. Where the trustee's discretion is completely unrestrained by the language of the trust agreement, the court reviews the trustee's actions under a more deferential standard. This standard is the arbitrary and capricious standard. *See Exbom v. Central States, Southeast and Southwest Areas Health and Welfare Fund,* 900 F.2d 1138, 1142 (7th Cir.1990). Because the long term disability plan issued by UNUM to ChemRex does not bestow discretionary authority to determine eligibility or to construe terms upon ChemRex, the court will review the decision to deny eligibility *de novo.*

## C. CLAIM FOR BENEFITS

### 1. *Employee Status*

In moving for summary judgment, Roeder asks the court to rule that he was an employee of ChemRex and covered by its long term disability plan until December 31, 1992. He bases his position on language—or lack of language—found in the 1989 and 1991 agreements and upon ChemRex's post-agreement conduct which he says evinces the Defendant's intent that he remain an employee following the resignation of his executive positions.

Paragraph one (1) of the 1991 resignation agreement states that: "You will be relieved of all duties as of September 25, 1991." Affi-

4. Earlier, the court granted UNUM's motion to strike Roeder's demand for a jury trial of the claims against it. *See* Order of May 18, 1994.

davit of Charles L. Roeder at Exhibit D (filed July 1, 1994). Although the plain meaning of this provision appears to be that Roeder's employment was terminated for all purposes, the Plaintiff explains that he was only agreeing to resign his offices and seats on ChemRex-related boards of directors. Because the agreement does not specifically state that he is also resigning as a ChemRex employee, Roeder maintains that he continued to be a ChemRex employee until the 1991 agreement expired on December 31, 1992.

As a ChemRex employee, Roeder believes that he was eligible to participate in all the company's employee benefit plans, including the long term disability plan issued by UNUM. Roeder argues that the 1991 agreement extended the January 1, 1989 employment agreement through 1992, because it extends salary and certain other benefits through December of that year. The 1989 agreement provides that:

> The Employee shall be entitled to participate, in accordance with the respective terms and conditions thereof, in any present or future welfare plan (such as hospitalization, major medical, dental, life insurance, accidental death and dismemberment) pension, retirement or profit sharing plan adopted by the Company for the general and overall benefit of its employees.

Affidavit of Charles L. Roeder at Exhibit A (filed July 1, 1994).

Although the 1991 agreement does not specifically list the long term disability plan as a benefit to which Roeder would continue to be entitled, Roeder says that the long term disability plan is impliedly included in the list of continuing benefits found in paragraph 3(g) of the 1991 agreement which provides that:

> You will be entitled to receive the compensation and fringe benefits as described in paragraph 5(e) of the [1989] Agreement which are as follows:·
>
> ....
>
> Participation in other group plans such as pension, retirement or profit sharing plans of the Company to which you are presumably entitled up to December 31, 1992.

Affidavit of Charles L. Roeder at Exhibit D (filed July 1, 1984).

Roeder suggests that the phrase "other group plans" contained in paragraph 3(g) of the 1991 agreement is ambiguous in that it may or may not include the long term disability plan. Roeder insists that it was the intent of the parties to include coverage under the plan and that, because ChemRex drafted the 1991 agreement, any ambiguity must be resolved against the company. *See* Affidavit of Charles L. Roeder at ¶ 6 (filed August 3, 1994).

Finally, Roeder says that some actions taken by ChemRex after the signing of the 1991 agreement were consistent with his position that he continued to be employed through 1992. For instance, the Defendants admit that, until early in 1993, ChemRex continued to include Roeder's salary in the aggregate salary amount upon which it calculated the long term disability plan premiums which it remitted to UNUM.[5] *See* Affidavit of F. Douglas Fitzgerald at Exhibit B (filed July 1, 1994) [exerpts of deposition testimony of Randy Olson]. In addition, Roeder notes that the fact that ChemRex did not distribute

---

5. ChemRex's Randy Olson explains that this was a clerical error involving mistaken payment for approximately thirty former employees and a simultaneous failure to pay premiums for other active employees. The matter was settled privately with UNUM. *See* Supplemental Affidavit of Counsel [John D. Finerty, Jr.] at Exhibit (filed August 1, 1994) [deposition testimony of Tom Oelmann]; Affidavit of F. Douglas Fitzgerald at Exhibit B (filed July 1, 1994).

The policy at issue is self-accounting, which means that "ChemRex determines the amount of premium due to UNUM each month. ChemRex is responsible for making the appropriate additions and deletions that are figured into the monthly premium calculation." Affidavit of John A. Houser at ¶ 7.

The policy issued by UNUM provides that: "Clerical error or omission.... will not.... effect [sic] or continue an employee's insurance which otherwise would not be in force." Affidavit of Charles L. Roeder at Exhibit B (filed July 1, 1994) [Group Long Term Disability Insurance Policy Non Participating]. Moreover, the mere fact that UNUM accepted premiums calculated upon Roeder's salary cannot extend coverage of the policy. *See Nancarrow v. Aetna Casualty & Surety Company*, 932 F.2d 742, 744 (8th Cir. 1991).

his 401–K plan or his IRA for rollover until the end of 1992, shows that he was still employed by the company.

ChemRex, in turn, argues that it expected Roeder's employment to end with the signing of the 1991 agreement. It takes the position that the 1991 agreement did not extend the 1989 agreement, but superseded it. Noting that the 1991 agreement contains no mention of the long term disability plan, ChemRex explains that, as a matter of contract interpretation, no disability coverage was provided or intended:

> After relieving Roeder of all duties as of September 25, 1991, the Termination Agreement set forth the specific benefits that Roeder was to receive following the termination. Paragraph 3 of the Termination Agreement references paragraph 5(e) of the 1989 Employment Agreement. Paragraph 3, however, describes the benefits that Roeder is entitled to receive. Paragraph 3 is not a wholesale adoption of the terms of paragraph 5(e) or any other paragraph of the 1989 Agreement. Three examples illustrate that the 1991 Termination Agreement was meant to specifically control any and all benefits Roeder was to receive after his termination.

> First, paragraph 3(g) of the 1991 Termination Agreement entitles Roeder to certain benefits described in the 1989 Employment Agreement:

>> 3. You will be entitled to receive the compensation and fringe benefits as described in paragraph 5(e) of the Agreement which are as follows:

>> . . . .

>> (g) Participation in other group plans such as pension, retirement or profit sharing plans of the Company to which you are presently entitled up to December 31, 1992.

> A comparison of paragraph 3(g) above, with paragraph 3(c)(iv) of the Employment Agreement demonstrates the parties did not intend to confer *all the* benefits of the Employment Agreement in the Termination Agreement. Paragraph 3(c)(iv) reads:

>> (iv) The Employee shall be entitled to participate, in accordance with the re-

spective terms and conditions thereof, in any present or future welfare plan (such as hospitalization, major medical, dental, life insurance, accidental death and dismemberment) pension, retirement or profit sharing plan adopted by the Company for the general and overall benefit of its employees.

> The Termination Agreement divided paragraph 3(c)(iv) of the Employment Agreement into three parts. The reference to "pension, retirement or profit sharing" plans was retained in paragraph 3(g) of the Termination Agreement. These three types of group plans relate specifically to monetary, deferred, compensation that Roeder *actually received* as a ChemRex employee—and they are germane to each other. Accordingly, they were grouped together in paragraph 3(g).

> The references in paragraph 3(c)(iv) to "medical, dental [and] life insurance" was incorporated into paragraph 3(f) of the Termination Agreement:

>> (f) Group medical, dental and life insurance benefits to December 31, 1992 and thereafter for an additional 12 months, but only so long as you do not have entitlement to coverage under a similar plan of another employer.

> Paragraph 3(f) does *not* provide coverage for Long Term Disability benefits—even though the language adopted by 3(f) is germane to the same "present or future welfare plan" language of paragraph 3(c)(iv) that entitled Roeder to disability coverage as an active employee. The parties could have, just as easily, adopted the broader "welfare plan" language into paragraph 3(f), however, they chose not to and, thereby, limited Roeder's entitlement to, specifically, "group medical, dental and life insurance benefits." As disability coverage does not fall into one of those specific categories, paragraph 3(f) is not a source of Long Term Disability benefit entitlement.

> Thus, any remaining benefits available to Roeder as an active ChemRex employee, conferred by paragraph 3(c)(iv) of the Employment Agreement, dropped out by

virtue of the Termination Agreement (After all, Roeder was *not* being terminated because of his disability.) Long Term Disability insurance coverage was one of the ChemRex "welfare plans" that the Termination Agreement did not specifically extract from the Employment Agreement.

Brief of Defendant ChemRex Inc. in Support of Summary Judgment at 15–17.

ChemRex goes on to point out that Roeder's conduct after entering into the 1991 agreement is inconsistent with his claim that he remained a ChemRex employee. For example, in May of 1992, he billed the company for $800.00 for time he spent giving a company-related deposition. *See* Affidavit of Bryan B. House at Exhibit F (filed July 1, 1994) [exerpts from the deposition testimony of Charles L. Roeder]. In March of 1992, he also asked for, and was given, $12,000.00 by ChemRex for outplacement services. *See* Supplementary Affidavit of Richard E. Aschenbrenner at ¶ 2 & Exhibit 15 (filed August 1, 1994). In announcements and business letters to colleagues and associates, Roeder consistently depicted himself as no longer working for ChemRex. *See* Affidavit of Richard E. Aschenbrenner at Exhibits 6–9 (filed July 1, 1994). As for its own conduct, ChemRex disavows any intent that Roeder was to have remained employed or covered by the long term disability plan after September of 1991. *See generally* Affidavit of Richard E. Aschenbrenner (filed July 1, 1994). The company assigned no regular work to Roeder and made no promises of benefits under the UNUM plan. *See Id.*

Based on this record, Roeder, who would have the burden of proof at trial, has not met his burden of showing sufficient evidence to justify a judgment in his favor on the employment status issue and he has not persuaded the court that he is entitled to judgment on this preempted claim as a matter of ERISA law. Therefore, this prong of Roeder's summary judgment motion will be denied. The Defendants, who do not consider the employment status issue to be separable from the ERISA plan eligibility issue, have not sought summary judgment or a dispositive ruling on this issue.

## 2. *Eligibility*

█ Even if Roeder were ultimately to prevail on the issue of whether he continued to be a ChemRex employee until December 31, 1992, he would still have to prove that he was "eligible" for benefits "in accordance with the respective terms and conditions" of the long term disability policy. *See* Affidavit of Charles L. Roeder at Exhibit A (filed July 1, 1994) [1989 employment agreement at ¶ 3(c)(iv) ]. The policy provides coverage for "employees" of ChemRex and it defines an "employee" as "a person in active employment with the employer." Affidavit of Charles L. Roeder at Exhibit B (filed July 1, 1994) [Group Long Term Disability Insurance Policy Non Participating]. "Active employment" is defined as follows:

For the purposes of this policy:
"Active employment" means the employee must be working:
 1. for the employer on a full-time basis and paid regular earnings (temporary or seasonal employees are excluded);
 2. at least the minimum number of hours shown in the policy specifications; and either
 3. at the employer's usual place of business; or
 4. at a location to which the employer's business requires the employee to travel.

*Id.*

In moving for summary judgment, ChemRex and UNUM argue that Roeder was not eligible for coverage because he was not engaged in "active employment" for the company at any time after he resigned in 1991. Active employment is a condition precedent to eligibility for benefits under the policy. *See Todd v. Dow Chemical Company,* 760 F.2d 192, 194 (8th Cir.1985). The policy specifications require that the minimum number of hours required for active employment status is thirty hours per week. *See Id.* The Defendants point out that, although the 1991 resignation agreement required that Roeder assist in the transition,[6] it specified

---

6. Paragraph five (5), the 1991 agreement alludes

to some wind-up activities:

no post resignation employment duties. It is undisputed that, aside from a few minor and isolated instances, Roeder actually performed no employment-related duties for ChemRex after early October of 1991. The Defendants also note that Roeder performed no work at "the employer's usual place of business" after he left his office in early October of 1991.

Although Roeder lists a few services he performed for ChemRex after September 24, 1991, he does not attempt to prove that he worked thirty hours per week after he resigned his executive positions. Instead, he states that he was ready, willing, and able to work in excess of thirty hours per week, but that ChemRex did not assign him any work. He blames ChemRex for preventing him from actually working thirty hours per week and for not assigning him a place of employment. He asks that he not be denied benefits because of a condition over which he had no control.

The court cannot accept Roeder's strained interpretation of the insurance policy language. The undisputed facts do not support the Plaintiff's contention that he was engaged in "active employment" when he became disabled. The 1991 agreement contains no explicit or inferential indication that Roeder would continue to be a ChemRex employee and it specified no continuing work assignments. Under these circumstances, Roeder's claim that he was standing by, waiting to be assigned full time work is unreasonable.

The term "active employment," as used in the policy, is not ambiguous and must be given its natural common-sense meaning. See Burnham v. Guardian Life Insurance Company of America, 873 F.2d 486, 489 (1st Cir.1989) ("Notwithstanding the ennobling purposes which prompted passage of ERISA, courts have no right to torture language in an attempt to force particular results or to convey delitescent nuances the contracting parties neither intended nor imagined."). Although neither the parties nor the court have found any published decision in which a court faced the precise situation at issue here, courts interpreting the "active employment" requirement in various insurance policies have consistently held that, in order to meet this requirement, an employee must actually be at work or at least be physically fit and available to perform work assignments which the employee has a reasonable expectation of receiving. See, e.g., Edwards v. Great–West Life Assurance Company, 20 F.3d 748, 749–50 (7th Cir.1994); McMahan v. New England Mutual Life Insurance Company, 888 F.2d 426, 430 (6th Cir.1989); Todd v. Dow Chemical Company, 760 F.2d 192, 194–95 (8th Cir.1985); Mutual of Omaha Insurance Company v. Chadwell, 426 F.Supp. 550, 553 (N.D.Ill.1977). For example, a resident physician could be considered actively employed by a hospital even when she is not at the hospital working, but is at home "on call" waiting for an emergency to arise. By no stretch of the facts in this case was Roeder in this type of position.

The facts material to the issue of whether Roeder fulfilled the active employment condition precedent to eligibility under the long term disability policy are undisputed. Because the term at issue is not ambiguous, the interpretation of the provision is a matter of law. See Grun v. Pneumo Abex Corporation, 808 F.Supp. 632, 635 (N.D.Ill.1992). Giving the term its reasonable construction, the court rules that Roeder was not engaged in active employment with ChemRex within the meaning of the UNUM-issued policy after he resigned in 1991 or became disabled in November of 1992. Therefore, he is not eligible for benefits under the policy. Consequently, the court will deny Roeder's motion for summary judgment on this issue and grant the summary judgment motions of ChemRex and UNUM. The Defendants have established that they are entitled to judgment as a matter of law.

### 3. Failure to Join Plan

In conclusion, the court notes that, even if Roeder were eligible for benefits under the

---

It is our mutual intention that the action referred to herein shall be taken on an amicable basis. The Company and you will take all reasonable care to ensure that the other's reputation and standing is not harmed by its or your actions and you will assist the Company upon request to ensure an orderly transition to your successor.
Affidavit of Charles L. Roeder at Exhibit D (filed July 1, 1994).

UNUM long term disability plan, the court could not award relief from the named defendants. In his Amended Complaint, Roeder states that he is suing ChemRex and UNUM as the administrators of the long term disability plan. *See* Amended Complaint and Jury Demand at ¶ 4.

Despite the court's warning at the initial scheduling conference that all necessary parties should be joined and the setting of a deadline for joinder and for amendment of the complaint, the Plaintiff failed to join the ERISA plan. An ERISA plan is the only proper defendant when a claim is made for benefits or for a clarification of benefits under the ERISA civil enforcement statute, 29 U.S.C. § 1132(a)(1)(B). *See Chilcote v. Blue Cross & Blue Shield,* 841 F.Supp. 877, 880 (E.D.Wis.1993). Section 1132 provides that:

> Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter.

29 U.S.C. § 1132(d)(2). Although Roeder purports to be only seeking a clarification of his right to benefits under the plan and not a money judgment, any declaratory judgment the court would have issued in favor of Roeder would have had the effect of ordering payment from the plan. No equitable relief is available under subsection 1132(a)(1)(B) from any ERISA entity other than the plan. Therefore, failure to join the plan as a necessary party defendant constitutes an additional ground for granting judgment in favor of the Defendants.

### ORDER

For the reasons explained above, the court ORDERS that Plaintiff Charles L. Roeder's "Motion for Summary Judgment" (filed July 1, 1994) IS DENIED.

IT IS FURTHER ORDERED that the "Motion of ChemRex Inc. to Dismiss Plaintiff's State Law Claims and to Strike the Plaintiff's Jury Demand and Request for Compensatory and Punitive Damages" (filed April 15, 1994) IS GRANTED.

IT IS FURTHER ORDERED that "Defendant UNUM's Motion for Summary Judgment Dismissing the Complaint" (filed July 1, 1994) IS GRANTED.

IT IS FURTHER ORDERED that the "Motion of Defendant ChemRex Inc. for Summary Judgment" (filed July 1, 1994) IS GRANTED.

IT IS FURTHER ORDERED that the "Joint Motion of the Parties to Stay Further Proceedings Pending Summary Judgment" (filed August 29, 1994) IS DENIED.

IT IS FURTHER ORDERED that this action is dismissed upon its merits.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter a final judgment as a separate document. This judgment shall provide that:

> This action came on for hearing before the court, Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED that Plaintiff Charles L. Roeder take nothing, and that his action against Defendants ChemRex Inc. and UNUM Life Insurance of America is dismissed upon its merits.