Richard DRAKE, Plaintiff,

v.

TOWN OF MANSFIELD,
Defendant/Third–Party
Plaintiff,

v.

Sun Life Assurance Co. of Canada,
Sun Life Financial, Third–
Party Defendants.

No. 3:08 CV 1659(MRK).

United States District Court,
D. Connecticut.

Aug. 28, 2009.

Thomas J. Riley, Tobin, Carberry, O'Malley, Riley & Selinger, New London, CT, for Plaintiff.

Johanna G. Zelman, Melinda A. Powell, Michael J. Rose, Sara Woodrell Papa, Rose Kallor LLP, Hartford, CT, for Defendant/Third–Party Plaintiff.

Joan O. Vorster, Kristina Hendrickson Allaire, Mirick, O'Connell, Demallie & Lougee, Worcester, MA, for Third–Party Defendants.

## MEMORANDUM OF DECISION

MARK R. KRAVITZ, District Judge.

Plaintiff Richard Drake sued Defendant and Third–Party Plaintiff the Town of Mansfield ("the Town") for refusing to allow him to resume his job as a firefighter after he was diagnosed with a meningioma (a benign brain tumor). Mr. Drake brought his claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. §§ 701 *et seq.*, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a–51 *et seq. See* Pl.'s First Am. Compl. [doc. # 17]. The Town then filed a Third–Party Complaint [doc. # 20] against Third–Party Defendant Sun Life Assurance Company ("Sun Life") alleging breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment for Sun Life's denial of Mr. Drake's applications for disability benefits under a disability insurance policy purchased by the Town for its employees ("the policy"). Sun Life filed a Motion to Dismiss [doc. # 24] the Town's Third–Party Complaint, which the Court denied without prejudice after an on-the-record telephonic conference with the parties on May 20, 2009. *See* Order [doc. # 46].

During that telephonic conference it became clear that a threshold issue was whether Mr. Drake was "actively at work" under the terms of the policy. Therefore, the Court directed the parties to brief that issue. In response, Sun Life filed the pending Motion for Summary Judgment [doc. # 52], and the Court heard oral argument on the motion on August 14, 2009. For the reasons that follow, the Court DENIES Sun Life's Motion for Summary Judgment [doc. # 52].

## I.

As the Court is faced with a straightforward question of insurance policy interpretation, only a brief recitation of the facts is necessary. Mr. Drake, a firefighter with the Town of Mansfield since 1974, was diagnosed with a meningioma on February 26, 2007. As a result of his condition, he stopped working after March 4, 2007. In April 2007, with the support of his physician, Mr. Drake sought to return to work. However, the Town required Mr. Drake to be examined by their own physician before they would allow him to resume his duties. The Town's physician examined Mr. Drake and refused to certify him as fit to work as a firefighter. As a result, the Town refused to let him return to his job. Instead, they placed him on a leave of absence

retroactive to March 4, 2007, although the Town also asserts that they continued to schedule Mr. Drake to work at least 36 hours per week by placing his name on the firefighter shift schedule. *See* Third–Party Pl.'s Mem. in Supp. of Objection to Third–Party Def.'s Mot. for Summ. J. [doc. # 76] ("Town's Memo") Ex. A ¶¶ 15, 19, 21–22, 24. Mr. Drake regularly sought to be reinstated to his position, but the Town consistently denied his request.

After the Town refused to allow him to return to work in 2007, Mr. Drake applied for and received short-term disability benefits through the employer-sponsored plan with Sun Life. When those benefits were exhausted, the Town began paying Mr. Drake his regular income, but still refused to let him work, continuing Mr. Drake on an approved leave of absence. Mr. Drake later applied for long-term disability benefits from Sun Life, but that claim was denied on September 14, 2007 on the ground that Mr. Drake was capable of performing his job as a firefighter.

On April 13, 2008, Mr. Drake was diagnosed with a cardiac condition, which Mr. Drake now agrees renders him unfit for work as a firefighter. On June 11, 2008, Mr. Drake applied for short-term disability benefits from Sun Life based on this new, cardiac condition. On October 8, 2008, Sun Life denied Mr. Drake's second claim for disability benefits, this time on the ground that Mr. Drake was no longer cov-ered by the policy because he was not "actively at work" from March 4, 2007 to June 11, 2008. In its Motion for Summary Judgment [doc. # 52], Sun Life asserts that its interpretation of the policy is correct as a matter of law, and that the Town thus has no claim relating to the October 2008 denial of benefits because Mr. Drake was not eligible for disability benefits under the policy. In response, the Town disputes Sun Life's interpretation of the policy, and argues that Mr. Drake was "actively at work" under the policy as of June 2008 and that he also fit into an exception to the "termination" provision of the policy.[1]

## II.

The summary judgment standard is a familiar one. Summary judgment is appropriate only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "A dispute regarding a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Utica Coll. of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir.2006) (quotation marks omitted). "The substantive law governing the case will identify those facts that are material, and '[o]nly disputes over facts that might

---

1. Sun Life argues that if the Court were to grant summary judgment, that would dispose of all claims brought by the Town against Sun Life. *See* Third–Party Def.'s Mem. in Supp. of Mot. for Summ. J. [doc. # 53] ("Sun Life's Memo") at 3 & n. 1. The Town maintains that it would still have a claim for the September 2007 denial of benefits even if the Court were to grant summary judgment for Sun Life on the pending question of contract interpretation. *See* Third–Party Pl.'s Mem. in Supp. of Objection to Third–Party Def.'s Mot. for Summ. J. [doc. # 76] ("Town's Memo") at 4 n. 2, 36–37. Because the Court denies Sun Life's motion it need not resolve this dispute. However, the Court agrees with the Town to the extent that the September 2007 claim arose under different circumstances and was denied on different grounds than the October 2008 claim, and thus a determination of the reasonableness of the second denial has no bearing on the reasonableness of the first denial. Of course, the Court has no opinion at this time as to whether there is any merit to any claim by the Town based on the first denial of benefits.

affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir.2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party, *see Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir.2008). If the moving party carries its burden, the party opposing summary judgment "may not rely merely on allegations or denials." Fed.R.Civ.P. 56(e)(2). Rather, the opposing party must "set out specific facts showing a genuine issue for trial." *Id.* In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

### III.

As an initial matter, the parties (and particularly the Town) spend a significant portion of their briefs arguing about who bears the burden of proof on the issue of contract interpretation. Sun Life claims that the burden is on the Town to establish Mr. Drake's eligibility for benefits. *See* Third–Party Def.'s Mem. in Supp. of Mot. for Summ. J. [doc. # 53] ("Sun Life's Memo") at 9. The Town argues that Sun Life is a fiduciary under Connecticut law, and even though there is no breach of fiduciary duty claim in the Third–Party Complaint, the Town claims that Sun Life has the burden of proving that it acted fairly by clear and convincing evidence. *See* Town's Memo [doc. # 76] at 11–15. Alternatively, the Town claims that even if Sun Life does not have a fiduciary duty, Sun Life still bears the burden of establishing its position by a preponderance of the evidence. *See id.* at 17–20.

The Court does not believe that it is necessary to decide whether Sun Life is a fiduciary or which party bears the burden of proof to resolve the dispute before it. The Court is faced with a straightforward question of contract interpretation, and its analysis would not change based on which side bears the burden. During oral argument, the Court suggested that it did not need to resolve the burden of proof question, and asked the parties to explain why the burden matters to the present summary judgment motion if they disagreed with the Court's inclination. Neither party elected to address the issue. Nor will the Court.

### IV.

The parties agree that Connecticut law governs the Court's interpretation of the policy.[2] In Connecticut, as in most states:

**2.** Notably, this case is not governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.* Although an employee-sponsored disability insurance plan would normally fall within ERISA's ambit, the particular plan at issue here is provided by a governmental entity. A plan that is "established or maintained for its employees ... by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing," is exempt from ERISA. 29 U.S.C. §§ 1002(32),

An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract.... If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning.... Under those circumstances, the policy is to be given effect according to its terms. *National Grange Mutual Ins. Co. v. Santaniello*, 290 Conn. 81, 88–89, 961 A.2d 387 (2009) (quotation marks and citation omitted). However, "[a]s with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading.... Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." *Id.* at 89, 961 A.2d 387 (quotation marks and citation omitted); *see also Connecticut Med. Ins. Co. v. Kulikowski*, 286 Conn. 1, 6, 942 A.2d 334 (2008); *Community Action for Greater Middlesex County, Inc. v. Am. Alliance Ins. Co.*, 254 Conn. 387, 399, 757 A.2d 1074 (2000). Of course, "[t]his rule of construction may not be applied ... unless the policy terms are indeed ambiguous." *National Grange*, 290 Conn. at 89, 961 A.2d 387 (quotation marks and citation omitted).

There are two provisions at issue in the pending motion. Because of their importance to the resolution of this question, it is necessary to quote them at some length. The "actively at work" provision of the policy reads, in relevant part, as follows:

Actively at Work means that an Employee performs all the regular duties of his job for a full work day scheduled by the Employer at the Employer's normal place of business or a site where the Employer's business requires the Employee to travel.

An Employee is considered Actively at Work on any day that is not his regularly scheduled work day (e.g. vacation or holiday), provided the Employee was Actively at Work on his immediately preceding scheduled work day and the Employee:

—is not hospital confined; or

—is not disabled due to an injury or sickness.

Third–Party Def.'s Mem. in Supp. of Mot. for Summ. J. [doc. #53] ("Sun Life's Memo") Ex. A at SL0007. The "termination" provision of the policy reads, in relevant part, as follows:

An Employee will cease to be insured on the earliest of the following dates:

1. the date this Policy terminates.

2. the date the Employee is no longer in an Eligible Class.

3. the date the Employee's Class is no longer included for insurance.

4. the last day for which any required premium has been paid.

5. the date the Employee retires.

6. *the date employment terminates. Ceasing to be Actively at Work will be deemed termination of employment, except*

a. insurance will be continued for an Employee absent due to a disability during:

i. the Elimination Period; and

ii. any period the premium is being waived under this Policy.

b. *the Policyholder may continue the insurance by paying the required premium, subject to the following:*

1003(b)(1); *see also Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 913–14 (2d Cir. 1987); *Roy v. Teachers Ins. & Annuity Ass'n*, 878 F.2d 47, 49–50 (2d Cir.1989).

i. insurance may be continued for up to 1 month after the Employee has been temporarily laid off.

*ii. insurance may be continued for up to 3 months after the Employee has been given an approved leave of absence (including Family and Medical Leave of Absences).*

iii. insurance may be continued for up to 3 months of the Employee's paid vacation.

Sun Life's Memo [doc. # 53] Ex. A at SL 0030 (emphasis added).

Sun Life makes a simple argument based on the first paragraph of the actively at work provision. That paragraph states that "Actively at Work" means an employee performs all the regular duties of his job for a full work day scheduled by the employer at the employer's normal place of business. According to Sun Life, because Mr. Drake has not worked as a firefighter since March 4, 2007, he was not "actively at work" under the terms of the policy when he applied for disability benefits in June 2008 for his cardiac condition. Therefore, Sun Life's denial of benefits was proper.[3]

The Court must determine whether the language of the "actively at work" provision unambiguously supports Sun Life's interpretation. If the language of the policy is ambiguous (or unambiguously favors the Town's interpretation), then the Court must apply the doctrine of *contra proferentem* and construe the policy in favor of the Town. *See National Grange*, 290 Conn. at 89 n. 13, 961 A.2d 387. After closely examining the "actively at work" provision and the policy as a whole, and carefully considering the arguments of the parties, the Court concludes that the "actively at work" provision is, at the very least, ambiguous.

The portion of the actively at work provision that Sun Life's argument appears to ignore is as follows:

An Employee is *considered Actively at Work* on any day that is not his regularly scheduled work day (e.g. vacation or holiday), provided the Employee was Actively at Work on his immediately preceding scheduled work day and the Employee

—is not hospital confined;

—or is not disabled due to an injury or sickness.

Sun Life's Memo [doc. # 53] Ex. A at SL0007 (emphasis added). The parties agree that "vacation or holiday" contained in the "e.g. parenthesis" is a non-exhaustive list of non-regularly scheduled work days to which this provision applies. The parties also agree that a leave of absence would also fall into the same category. *See* Town's Memo [doc. # 76] at 32; Reply to Third Party Pl.'s Objection to Third Party Def.'s Mot. for Summ. J. [doc. # 81] ("Sun Life's Reply") at 6. Therefore, according to the plain language of the above-

---

3. Sun Life also argues in its Reply that the Town cannot claim both that Mr. Drake was scheduled to work and that he was simultaneously on an approved leave of absence. *See* Reply to Third Party Pl.'s Objection to Third Party Def.'s Mot. for Summ. J. [doc. # 81] ("Sun Life's Reply") at 5–6. However, there are no definitions of the terms "scheduled to work" and "leave of absence" in the policy, and the Court sees no reason why those terms are necessarily mutually exclusive. The question of whether Mr. Drake was actually sched-

uled to work is a factual one that the Court need not address at this time. Finally, Sun Life has made it clear in its Reply that it is not advancing an argument that Mr. Drake was ineligible for benefits because he was not a member of an eligible class of employees. *Id.* at 7. To the contrary, in making its benefits determination, Sun Life considered Mr. Drake to be an eligible employee under the policy, and based its denial solely on its determination that he was not "actively at work." *Id.*

quoted provision, Mr. Drake would be *"considered* Actively at Work" under the policy, so long as he was on a leave of absence from work and, on the scheduled work day immediately preceding his leave of absence, he was performing all the regular duties of his job for a full work day scheduled by the employer at his place of work.

■■■ Of course, the Court's analysis of the policy does not end with the "actively at work" provision. *See National Grange,* 290 Conn. at 89, 961 A.2d 387 ("When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result."). In its Reply and at oral argument, Sun Life argued that, under the "termination" provision of the policy, coverage for an employee on a leave of absence can continue for a maximum of three months after the leave of absence begins. *See* Sun Life's Reply at 6–7. The relevant portion of the "termination" provision states as follows:

> Ceasing to be Actively at Work will be deemed termination of employment, except ... b. the Policyholder may continue the insurance by paying the required premium, subject to the following: ... ii. insurance may be continued for up to 3 months after the Employee has been given an approved leave of absence

(including Family and Medical Leave of Absences).

Sun Life's Memo [doc. # 53] Ex. A at SL 0030. The Court agrees with Sun Life that the three-month period in the termination provision commences when the leave of absence begins.[4] So for example, an employee who was hospitalized the day before a leave of absence was granted would not be considered "actively at work" under the policy, and thus her coverage under the policy could continue for no more than three months after the date that the leave of absence was granted. However, according to the plain language of the policy, this provision (and thus the three-month limitation) applies only to employees who have *ceased* to be "actively at work." As discussed above, however, under the policy terms, Mr. Drake would be "considered Actively at Work"—and thus not subject to the three-month maximum—if he was on a leave of absence from work and on the scheduled work day immediately preceding his leave of absence, he was actively at work and not confined to a hospital or disabled due to an injury or sickness.

In other words, to accept Sun Life's argument the Court would need to ignore both the "ceasing to be Actively at Work" language and the "considered Actively at Work" language. Yet, under Connecticut law, the Court is not authorized to ignore the language of the policy. *See, e.g., Real*

---

4. The Court therefore rejects the Town's alternative argument that even if Mr. Drake has not been "actively at work" since March 4, 2007, he would still be eligible for benefits according to the terms of the "termination" provision because the Town has continued to pay his premiums and he remains on an approved leave of absence. *See* Town's Memo [doc. # 76] at 33–34. In making this argument, the Town relies on an interpretation of the "termination" provision wherein the three-month period begins once the approved leave of absence *ends. See id.* at 34. Such a reading of the provision is simply not plausible, as it reads the word "given" out of the provision. Clearly, "after the employee has been *given* an approved leave of absence" means after the leave of absence has begun. As a side note, the parties agreed at oral argument that this three-month limitation period would be extended under the policy if required by state law. According to the parties, Connecticut provides for four months of leave under the Family and Medical Leave Act.

*Estate Listing Serv., Inc. v. Connecticut Real Estate Comm'n,* 179 Conn. 128, 134, 425 A.2d 581 (1979) ("This interpretation is contrary to the plain language of the contract, which we cannot ignore.").

Despite this plain language, Sun Life urged the Court at oral argument that some cap on the length of time that an employee could be on a leave of absence is logical. Otherwise, an employee could take a 10– or 20–year leave of absence and still be eligible for disability coverage so long as they otherwise satisfied the definition of "actively at work" under the policy. The Court is sympathetic to this argument, but the plain language of the policy simply does not support such a reading, and in any event we are not faced with such a situation in this case. *See Macey v. Carolina Cas. Ins. Co.,* 585 F.Supp.2d 277, 285 (D.Conn.2008).[5] Sun Life may have intended to place a cap on the period of time an employee can be on an approved leave of absence, or it may wish to do so now. It would have been rather simple to say that coverage during any leave of absence, or vacation for that matter, cannot last longer than three months. But Sun Life's counsel conceded at oral argument that the policy does not say that. Sun Life failed to draft a policy that enacted such a limitation, and the Court cannot create one now.

Finally, in its brief in support of its motion, Sun Life cites several cases in other courts interpreting "actively at work" provisions. *See* Sun Life's Memo at 12–13, 16; *Locher v. UNUM Life Ins. Co. of Am.,* No. 96Civ.3828(LTS)(HPB), 2002 WL 362769 (S.D.N.Y. Mar. 7, 2002); *Mitchell v. CIT Group Holdings, Inc. Long Term Disability Plan,* No. 96 CV.

6153, 1998 WL 846825 (E.D.N.Y. Sept. 29, 1998); *Barinova v. ING,* No. 07–1085, 2008 WL 4224938 (D.N.J. Sept. 10, 2008); *Miller v. UNUM Life Ins. Co. Of Am.,* No. Civ.A. 03–00310 RMC, 2005 WL 1119798 (D.D.C. May 11, 2005); *Roeder v. Chem-Rex Inc.,* 863 F.Supp. 817 (E.D.Wisc.1994). However, none of these cases involves language similar enough to the language at issue in this case to be useful to Sun Life. Specifically, none of the cases includes the particular "ceasing to be Actively at Work" language or the "considered Actively at Work" language that proves so important in this case. As the Court's analysis above suggests, the precise language of the policy matters.

In sum, the Court cannot conclude that the language of the policy unambiguously favors Sun Life. At the very least, the relevant provisions are ambiguous, and so they must be interpreted in a manner that favors the Town. Therefore, under the terms of the policy, so long as Mr. Drake was on an approved leave of absence from March 4, 2007 to June 11, 2008, and on the scheduled work day immediately preceding his leave of absence he was actively at work and not hospitalized or disabled, he should be considered actively at work. Moreover, there is no cap in the policy on the duration that Mr. Drake can be covered by the policy while he is on a leave of absence, so long as he is considered to be actively at work during that period in accordance with the language of the policy. Whether Mr. Drake fulfills these conditions raise questions of fact, not law, and the Court has not been presented with all of the facts that bear on those issues. Therefore, summary judgment is not appropriate.

---

**5.** Nor does the Court believe that such a result is so absurd as to be unreasonable. So long as an employer keeps paying the premium for the employee and the employee continues to be otherwise eligible under the policy, it is not absurd to think that the insurance company would continue to provide disability coverage.

## V.

For the reasons discussed above, the Court DENIES Sun Life's Motion for Summary Judgment [doc. # 52].

IT IS SO ORDERED.