888 F.2d 426
 11 Employee Benefits Ca 2057
 Roy F. McMAHAN, Jr.; Louis T. Roth, as Trustee under the
will of Mary Alice McMahan, deceased; Colleen Liebert;
Dianne Hutcherson, as partners in McMahan Plaza, a Kentucky
general partnership, Plaintiffs-Appellants,
v.
NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY, Defendant-Appellee.
 No. 88-6236.
 United States Court of Appeals,
Sixth Circuit.
 Argued June 6, 1989.
Decided Oct. 23, 1989.
 
 Vincent F. Mallon (argued), Joseph H. Cohen, Louisville, Ky., for plaintiff-appellants.
 Samuel G. Bridge, Jr. (argued), Wyatt, Tarrant and Combs, Louisville, Ky., for defendant-appellee.
 Before KENNEDY, JONES and WELLFORD, Circuit Judges.
 NATHANIEL R. JONES, Circuit Judge.
 
 
 1
 Plaintiffs appeal from the district court's grant of summary judgment for the defendant in this action filed under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. Sec. 1001 et seq. (1982) (ERISA). For the reasons which follow, we affirm in part, vacate in part, and remand for further proceedings consistent with this opinion.
 
 I.
 
 2
 On December 30, 1971, defendant-appellee, New England Mutual Life Insurance Company ("New England"), issued a group health insurance policy to the Finance, Insurance and Real Estate Trust ("Trust"), a Kentucky-based multiple employer trust formed for the purpose of obtaining group health insurance for its members. McMahan Plaza, a Kentucky general partnership engaged in the real estate business, joined the Trust on November 1, 1979, and was issued a "Master Certificate" under the Trust's group health policy. Thereafter, New England issued individual insurance policies to McMahan Plaza's partners and employees. Roy F. McMahan, Sr. ("McMahan"), a general partner in McMahan Plaza who was then seventy-six years old, obtained an individual life insurance policy in the amount of $70,000.00. The partnership was the named beneficiary of McMahan's policy.
 
 
 3
 On September 15, 1985, McMahan suffered a heart attack which ultimately resulted in his death on March 21, 1986. Because McMahan was frequently hospitalized as a result of this heart attack, he stopped working with the partnership on a full-time basis. According to his son and business partner, however, McMahan continued to participate in the partnership's business decisions and he received regular disbursements of income during his illness. Soon after McMahan died, the beneficiaries of his life insurance policy filed a claim for benefits under the policy. By letter dated June 24, 1986, New England denied benefits on the ground that McMahan terminated his "employment" with the partnership prior to the time that he died. Relying upon various provisions in the group health policy, New England maintained that McMahan's insurance coverage terminated when he ceased to devote a substantial part of his time to the business of the partnership during his illness. Thus, New England concluded that McMahan's insurance coverage expired well prior to his death in March 1986.
 
 
 4
 On January 22, 1987, the McMahan Plaza partners filed suit against New England in federal district court. In their complaint, the partners asserted a state law breach of contract claim as well as a claim under ERISA, and alleged that New England acted "maliciously, intentionally, willfully, wrongfully, and in total disregard of [their] rights under said life insurance policy by denying coverage...." J.App. at 4. Plaintiffs sought the $70,000.00 allegedly due under the policy, plus interest and reasonable attorney's fees.
 
 
 5
 In August and September of 1987, the parties filed cross-motions for summary judgment. Thereafter, the district court entered a memorandum opinion and order granting defendant's motion. Relying primarily upon Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the district court found that the partners' state law claim was pre-empted by ERISA. With respect to the ERISA claim, the district court held that since New England was an ERISA "plan fiduciary," its decision to deny benefits was subject to the "arbitrary and capricious" standard of review. Finding that New England's denial of benefits was not arbitrary and capricious, the district court ruled that the partners were not entitled to recovery under ERISA. This timely appeal followed.
 
 II.
 
 6
 We first address whether the district court correctly found that the state law claim was pre-empted by ERISA. ERISA comprehensively regulates employee welfare benefit plans that, "through the purchase of insurance or otherwise," provide medical care or benefits in the event of sickness, accident, disability or death. 29 U.S.C. Sec. 1002(1). The statute contains three provisions relating to its broad pre-emptive effect, and two of these are relevant to the case at bar. ERISA's "pre-emption clause" states that:
 
 
 7
 Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....
 
 
 8
 Id. at Sec. 1144(a) (emphasis added). The "saving clause," however, provides that:
 
 
 9
 Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking or securities.
 
 
 10
 Id. at Sec. 1144(b)(2)(A) (emphasis added). Thus, if a state law "relates to" an employee benefit plan, it is pre-empted by section 1144(a) unless it is saved from pre-emption by section 1144(b)(2)(A).
 
 
 11
 Plaintiffs contend that their state law breach of contract claim is not pre-empted because that claim does not "relate to" an employee benefit plan. Rather, plaintiffs assert that the claim pertains only to a benefit provided by the group health insurance policy. Thus, because the pre-emption clause mentions only benefit plans, as opposed to plan benefits, plaintiffs argue that their state law claims are outside the scope of section 1144(a). We reject this argument. The Supreme Court has made clear that if a state law "has a connection with or reference to" an employee benefit plan, then the law "relates to" the plan and comes within the scope of the pre-emption clause. Metropolitan Life Insurance Co. v. Massachusetts, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985); Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). Moreover, even when the state law at issue relates specifically to employee benefits, the Supreme Court "ha[s] not hesitated to enforce [the pre-emption clause] where state law created the prospect that an employer's administrative scheme would be subject to conflicting requirements." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 10, 107 S.Ct. 2211, 2216, 96 L.Ed.2d 1 (1987). Consequently, when state law threatens to subject an ERISA plan administrator or fiduciary to inconsistent administrative obligations, then the relevant state law is within the scope of ERISA's pre-emption clause. See, e.g., Northern Group Services v. Auto Owners Ins. Co., 833 F.2d 85, 87-89 (6th Cir.1987).
 
 
 12
 Turning to the instant case, we are convinced that applying Kentucky contract law to disputed benefits claims could potentially subject New England to inconsistent obligations under the laws of various states. Unlike the state law obligation at issue in Fort Halifax, supra, which the Supreme Court described as "little more than writ[ing] a check," applying state contract law to the benefits claim involved in this case could force the fiduciary/insurer to make actuarial and cost adjustments based upon legal risks unique to the contract law of each state. See Northern Group Services, 833 F.2d at 89 (holding that state law which, inter alia, required plan administrators to make "appropriate" actuarial and cost adjustments regarding plan benefits created risk of inconsistent state regulation). We think it clear that subjecting an ERISA fiduciary to the vagaries of state contract law regarding its benefits decisions would create the very real prospect that the fiduciary's administrative scheme would be subject to conflicting requirements in the various states. See, Kanne v. Connecticut General Life Insurance Co., 859 F.2d 96 (9th Cir.1988) (holding that California's common law contract interpretation as it applies to insurance contracts falls under the ERISA pre-emption doctrine). Accordingly, we reject plaintiffs' first argument and hold that the state law claim in this case was within the reach of the pre-emption clause.
 
 
 13
 In their next argument, plaintiffs contend that their state law claim is saved from pre-emption because the applicable body of Kentucky decisional law "regulates insurance." To escape pre-emption via the saving clause, the relevant state law must meet the established criteria for interpreting the phrase "business of insurance" in the McCarran-Ferguson Act, 15 U.S.C. Sec. 1011 et seq. (1982). Pilot Life, supra, 481 U.S. at 48, 107 S.Ct. at 1553. Therefore, in determining whether a state law claim is saved from pre-emption under section 1144(b)(2)(A), we must consider whether the applicable state law: (1) has the effect of transferring or spreading policyholders' risk; (2) constitutes an integral part of the policy relationship between the insurer and the insured; and (3) is limited to entities within the insurance industry. Id. at 48-49, 107 S.Ct. at 1553-54. In addition, Pilot Life indicates that courts should employ a common-sense understanding of the phrase "regulates insurance" as it appears in the saving clause. Id. at 48, 107 S.Ct. at 1553.
 
 
 14
 The Kentucky decisions cited by plaintiffs in the instant case essentially hold that ambiguous terms in an insurance contract should be construed against the insurer. See, e.g., Shipley v. Kentucky Farm Bureau Ins. Co., 747 S.W.2d 596, 598 (Ky.1988); Wolford v. Wolford, 662 S.W.2d 835, 838 (Ky.1984). However, these decisions are merely specific applications of the long-prevailing rule in Kentucky that "if [a] contract is ambiguous and equally susceptible to two constructions, that one will be adopted which is the least advantageous to the [party] who prepared and printed it." Wallace v. Cook, 190 Ky. 262, 268-69, 227 S.W. 279, 282 (1921). Accord, Warfield Natural Gas Co. v. Clark's Administratrix, 257 Ky. 724, 734-35, 79 S.W.2d 21, 26 (1934); Glenmary Land Co. v. Stewart, 217 Ky. 635, 638, 290 S.W. 503, 504 (1927). In our view, this general principle of contract construction does not effect a spreading or transferring of policyholders' insurance risk, but rather forces the insurer to bear the legal risks associated with ambiguous policy language. Moreover, given the limited circumstances in which this rule of construction applies, i.e., when the contract is ambiguous and equally susceptible to two interpretations, it cannot be said to constitute an "integral part" of the policy relationship between the insurer and the insured. In addition, as the above-cited Kentucky decisions make clear, the general principle of construction relied upon by plaintiffs obviously is not "limited to entities within the insurance industry." Finally, taking a common-sense approach, we think it clear beyond cavil that general principles of contract interpretation do not "regulate insurance" even if those principles are applied in an insurance context. For as the Supreme Court stated in Pilot Life, "[a] common sense view of the word 'regulates' would lead to the conclusion that in order to regulate insurance, a law must not just have an impact on the insurance industry, but must be specifically directed toward that industry." 481 U.S. at 50, 107 S.Ct. at 1554 (emphasis added).
 
 
 15
 Because the McCarran-Ferguson criteria are not satisfied in this case, and because a common-sense understanding of the statutory language does not dictate otherwise, we hold that the Kentucky decisions relied upon by plaintiffs do not "regulate insurance" within the meaning of ERISA's saving clause. Accordingly, since plaintiffs' state law claim is pre-empted by ERISA and is not rescued by the statute's saving clause, we conclude that the district court properly dismissed that claim.
 
 III.
 
 16
 The next issue that we address is whether the district court properly dismissed plaintiffs' ERISA claim. As noted earlier, the district court found that New England was an ERISA "plan fiduciary," and therefore held that its decision to deny insurance benefits to plaintiffs was subject to the "arbitrary and capricious" standard of review. While the district court's decision in this regard was based upon a reasonable construction of then-existing precedent, see, e.g., Varhola v. Doe, 820 F.2d 809, 812-13 (6th Cir.1987), the Supreme Court has since held that de novo review is the generally appropriate standard for reviewing an ERISA plan fiduciary's denial of benefits. Firestone Tire and Rubber Co. v. Bruch, --- U.S. ----, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Firestone Court held that "a denial of benefits challenged under [29 U.S.C.] Sec. 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. 109 S.Ct. at 956. Moreover, when the benefit plan gives such discretionary authority to an administrator or fiduciary who is operating under a conflict of interest, "that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.' " Id. at 956-57 (quoting Restatement (Second) of Trusts Sec. 187, Comment d (1959)).
 
 
 17
 The parties to this case agree that under Firestone, the district court should have reviewed de novo New England's denial of insurance benefits. New England contends, however, that the district court's error in this regard is harmless because, even under a de novo standard of review, there were no genuine issues of material fact precluding a grant of summary judgment in its favor. On the other hand, plaintiffs assert that the policy language is ambiguous as to whether or when a partner's insurance coverage could cease by reason of termination of "employment." Therefore, they contend that the pertinent policy provisions should be construed against New England since it drafted the policy.
 
 
 18
 Having reviewed the relevant terms in the insurance policy, we conclude that the pertinent policy provisions are not ambiguous. The policy states that only "employees" who are actively at work shall be eligible for insurance coverage, and further states that:
 
 
 19
 The word "employee" as used herein shall mean any person who is employed and compensated for services by a Contributing Employer Member on a regular full-time permanent basis.... "Employee" shall also include any proprietor or partner who is actively engaged in, and devotes a substantial part of his time to, the conduct of the business of Contributing Employer Member.
 
 
 20
 J.App. at 56 (emphasis added). Since the policy provides that an employee's insurance coverage automatically ceases on the date of his termination of "employment," we conclude that McMahan's insurance coverage expired when he ceased to be actively engaged in, and devote a substantial part of his time to, conducting the business of McMahan Plaza.
 
 
 21
 While we do not find the policy to be ambiguous, we are unable to determine on the present state of the record whether McMahan in fact qualified as an "employee" of McMahan Plaza during his illness. The only significant evidence before us that addresses this question is the affidavit of McMahan's son and business partner, plaintiff Roy F. McMahan, Jr., which states that:
 
 
 22
 Because of his illnesses, [McMahan] did not actively continue to work on a full-time basis between September 15, 1985 and his death on March 21, 1986. However, he continued to participate in certain substantial decisions on behalf of the partnership during his illness, such as matters regarding rent increases, suitability of prospective tenants, as well as discussions regarding property development ... and the amounts of rent being charged by competitors.
 
 
 23
 J.App. at 31. While this affidavit provides some enlightenment on the nature of McMahan's involvement with the partnership during his illness, we are unable to determine from the record before us whether he devoted a substantial part of his time to the business of the partnership during that period. Therefore, we are constrained to remand this case to the district court with instructions to supplement the record concerning this issue and, in accordance with Firestone, to review defendant's denial of benefits under a de novo standard.[1]
 
 IV.
 
 24
 For the foregoing reasons, the district court's judgment is AFFIRMED in part and VACATED in part, and the case is REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 
 [1]
 This court has held in a pre-Firestone decision that in reviewing a denial of benefits under ERISA, " '[a] federal court is to focus on the evidence before the trustees at the time of their final decision and is not to hold a de novo factual hearing.' " Crews v. Central States, 788 F.2d 332, 336 (6th Cir.1986) (quoting Wardle v. Central States, 627 F.2d 820, 824 (7th Cir.1980), cert. denied, 449 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981)). While the Firestone Court's rejection of the "arbitrary and capricious" standard of review might argue for a reconsideration of Crews, we are bound by Crews as the law of this Circuit. Accordingly, in supplementing the record and reviewing de novo New England's denial of benefits, the district court should consider only the evidence that was available to New England at the time of its final decision in this case