**Danny MITCHELL and Brenda Mitchell, Plaintiffs– Appellants,**

v.

**DIALYSIS CLINIC, INC. Dialysis Clinic, Inc., Employees Benefit Trust Defendants–Appellees.**

No. 00–5467.

United States Court of Appeals, Sixth Circuit.

Aug. 24, 2001.

Before KENNEDY, SILER, and CLAY, Circuit Judges.

KENNEDY, Circuit Judge.

In this ERISA action, plaintiffs, Danny and Brenda Mitchell, seek to recover medical expenses related to Danny's injuries from Brenda Mitchell's employer, defendant, Dialysis Clinic, Inc. (DCI). The plaintiffs assert Brenda's employee benefit plan (Dialysis Clinic, Inc. Employees Benefit Trust (the Plan)) entitles them to recover these expenses. The Mitchells ap-

peal the district court's decision granting defendants summary judgment. On appeal, the Mitchells argue (1) the district court ignored the plain meaning of the Plan and (2) the district court erred by applying an arbitrary-and-capricious standard of review to the Plan administrator's decision to deny coverage.

We find arbitrary and capricious the appropriate standard of review of the Plan's administrative decision. Applying that standard, we do not find fault in the administrator's interpretation against the Mitchells' claim. As a result, we affirm.

## I.

As an employee of DCI, Brenda Mitchell is covered by DCI's self-funded employee benefits Plan. As Brenda's spouse, Danny Mitchell is covered by the Plan as well. The Plan, which is governed by the Employee Retirement Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq*, gives the administrator, DCI, "the power to construe and interpret the provisions of the plan." J.A. at 132. That responsibility falls mainly to DCI's human resources director, David Hagewood. *See* J.A. 124.

Accordingly, he was responsible for determining whether the claim Mrs. Mitchell submitted for Danny's injuries was covered by the Plan. Mr. Mitchell, a self-employed sub-contractor, had broken his left ankle and right foot as a result of falling from scaffolding while working. On July 21, 1998, DCI sent Mrs. Mitchell an application for benefits form and inquired whether anyone else was responsible for the injury. *See* J.A. at 308. She returned the application and noted that "Danny is a self[-]employed sub-contractor responsible for himself. There is no workmans [sic] comp or other known responsible party." Upon receiving this response, Scott Graalman, who was apparently handling the claim, e-mailed Vickie Cochran, a DCI em-

ployee, inquiring as to whether the Plan would cover Mitchell, who Graalman believed, "was injured at work, on the job.... His employer does not carry workers comp insurance." J.A. at 310. A printed copy of the e-mail has a hand written note, presumably from Cochran, saying that "Exempt if less than 5" employees, "will require subrogation." The Mitchells suggest this note indicates the Plan's employees believed Mr. Mitchell was entitled to benefits.

On September 18, 1998, DCI informed Mrs. Mitchell, in an Explanation of Benefits form, that "Charges incurred as a result of an on-the-job injury or illness are not covered." J.A. at 222. The form provided no further explanation. On October 3, 1998, Ms. Mitchell sought further explanation by way of a letter, requesting an answer to why her claim had been denied so she could appeal the decision. J.A. 224. In response, on October 8, Mr. Hagewood, explained in a letter that "[t]he claims were denied because Mr. Mitchell's injury and/or illness occurred as the result of an on-the-job injury." Additionally, the letter went on to explain that "[t]his construction-related injury is covered pursuant to the Tennessee Workers' Compensation Act, and is therefore, not covered by the DCI Medical Benefits Plan." J.A. at 225. According to the Mitchells, Mr. Hagewood only reached this decision because he was advised to by DCI's attorneys at the law firm of Bass, Berry & Sims, which, they claim, represents DCI in litigation matters. As evidence, the Mitchells point to a letter from the firm advising Mr. Hagewood that it believed Mr. Mitchell's expenses were not covered by the Plan and attaching a letter for Mr. Hagewood to sign and send to Mrs. Mitchell explaining why the Plan was denying benefits. *See* J.A. 320–21. The letter contains the same language as

that Mr. Hagewood sent to Mrs. Mitchell on October 8.

Mrs. Mitchell appealed Mr. Hagewood's decision. On December 17, 1998, the Plan denied the appeal.

The Mitchells filed this action.

Plaintiffs claim that since Mr. Mitchell was self-employed as an independent contractor and had no worker's compensation insurance, that he was covered by Mrs. Mitchell's policy. They rely on the language of the "Medical Exclusions and Limitations" section of the Plan which provides:

No benefits will be payable under the Plan for the following:

* * *

5. Charges which result from any Accidental Bodily Injury or any Illness which arises out of, or in the course of employment with any employer for which the covered person is entitled to benefits under any Worker's Compensation Law.

DCI moved for summary judgment on the ground that the plain language and the administrator's reasonable interpretation of the Plan excludes coverage for Mr. Mitchell's injuries.

The Benefit Description of the Plan provides:

Non–Occupational Coverage

Unless otherwise specified, the accident and health coverage provided under this Plan is non-occupational and any reference to "illness" or "injury" in the following benefit sections means only a non-occupational illness or injury.

Non–Occupational Illness is one which does not arise of (or in the course of) any work for pay or profit, nor in any way results from an illness which does. However, if proof is furnished to the Plan administrator that an individual covered under a Worker's Compensation Law (or other law of similar purpose), is not covered for a particular illness under such law, that illness shall be considered "non-occupational" regardless of its cause.

Non–Occupational Injury is one which is an accidental bodily injury and does not arise out of (or in the course of) any work for pay or profit, nor in any way results from an injury which does.

The district court agreed that there was no coverage. It acknowledged that there was more than one plausible interpretation of the exclusion on which plaintiffs rely but under the deferential standard, it could not find the Plan's interpretation arbitrary or capricious especially in view of the Benefits Description language which clearly states there is no coverage for job-related injuries. The Mitchells appeal that decision.

## II.

On appeal, the Mitchells argue that the district court erred because (1) its interpretation of the exclusion provision is not supported by the provision's plain language, (2) it failed to construe any ambiguities against the drafters, and (3) it failed to take account of DCI's conflict of interest.

Because much of the argument goes to the issue of the standard of review, we begin there.

## A.

■ While the standard of review of the district court's decision is de novo, it is very deferential for the Plan administrator's decision. Where, as here, the Plan gives the administrator of the Plan discretionary authority to determine eligibility for benefits or to construe the terms of the Plan, this court reviews the administrator's decision only to determine whether she

acted arbitrarily or capriciously in denying benefits. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Johnson v. Eaton Corp.,* 970 F.2d 1569, 1572 (6th Cir.1992). "This standard 'is the least demanding form of judicial review of administrative action.... When it is possible to offer a reasoned explanation, based on evidence, for a particular outcome, that outcome is not arbitrary or capricious.' ... Thus, the standard requires that the decision 'be upheld if it is the result of a deliberate principled reasoning process, and if it is supported by substantial evidence.' " *Killian v. Healthsource Provident Administrators, Inc. .,* 152 F.3d 514, 520 (6th Cir. 1998) (citations omitted) (alteration in the original). Moreover, this court has said it will "grant plan administrators who are vested with discretion in determining eligibility for benefits great leeway in interpreting ambiguous terms." *Moos v. Square D. Co.,* 72 F.3d 39, 42 (6th Cir. 1995).

■ The Mitchells offer three arguments for their contention that this court should use some standard less deferential than that used by the district court. First, they point to cases from this Circuit that they claim have reduced the deference given to an administrator's decision through the use of state principles of contract interpretation. "[T]o the extent that the Plan's language is susceptible of more than one interpretation, we will apply the 'rule of contra proferentum' and construe any ambiguities against" the drafting party. *University Hospitals of Cleveland v. Emerson Elec. Co.,* 202 F.3d 839, 846–47 (6th Cir.2000) (quoting *Perez v.. Aetna Life Ins. Co.,* 150 F.3d 550, 557 n. 7 (6th Cir.1998) (en banc)); *see also Copeland Oaks v. Haupt,* 209 F.3d 811, 813 (6th Cir.2000). We do not believe that through these statements this Circuit has established a

rule of interpretation that would completely contradict the deference paid to an administrator's decision.

As the parenthetical notes, the court in *University Hospitals* attributes the application of the rule of interpretation to the *Perez* court. When we examine *Perez,* we see that the court was not talking about applying the principal to "temper" the arbitrary and capricious standard. Rather, the *Perez* court was interpreting the provision that was alleged to grant that discretion—the principal issue in the case. *See Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 557 & n. 7 (6th Cir.1998) (en banc). It was in that context that the court said it was *possible* to apply the state rule of interpretation. *See id.* ("Because the only reasonable interpretation of the Plan concludes that *it vests discretion* in Aetna to make benefit determinations, Perez's *contra proferentum* argument lacks merit.") (emphasis added).

The *Perez* court cites a footnote in an earlier case, *Schachner v. Blue Cross & Blue Shield of Ohio,* 77 F.3d 889, 895 n. 6 (6th Cir.1996), when describing how "[t]he rule of *contra proferentum* provides that ambiguous contract provisions in ERISA-governed insurance contracts should be construed against the drafting party." *Perez,* 150 F.3d at 557 n. 7. But that language does not hold that the *Perez* court was suggesting that the rule of interpretation is to be used in ERISA cases when the standard of review is arbitrary and capricious. And indeed when one reads *Schachner* one realizes that the *Perez* court was likely just citing it for descriptive purposes rather than suggesting that it was the rule in this Circuit. For *Schachner* does nothing more than state in a footnote that the court need not address the issue of whether the rule of interpretation applies in ERISA cases. "Since we hold that the phrase [in the Plan] is not

ambiguous, however, we need not consider" the arguments regarding the applicability of *contra proferentum*. *Schachner*, 77 F.3d at 895 n .6. Indeed, the court does not even purport to be reviewing the administrator's decision; rather, it makes clear it is applying a de novo standard of review to the contract. *See id.* at 893.

*University Hospitals*, while it states (citing *Perez* (*Id.* at 846)) it will construe any ambiguities against the drafter when applying the "arbitrary and capricious" standard, makes no further reference to that principle in its analysis and holding that the Plan administrator's construction of the Plan was arbitrary and capricious and that the only reasonable construction of the Plan was that asserted by the plaintiff.

*Copeland Oaks* was a suit by a benefit Plan to require the employee and his daughter who had suffered injuries to sign a subrogation agreement before it, the Plan, paid any of the daughter's medical expenses. Plaintiff's daughter's claim against a third party had been settled for $100,000 plus $5,000 medical expenses for the parents.

This Circuit had adopted the so-called "make whole" rule of federal common law. That requires an insured to be made whole before an insurer can enforce its rights to subrogation. *Copeland Oaks* attempted to rely on the language of the Plan and the arbitrary and capricious standard for its conclusion that the Plan had opted out of the default make-whole rule. The court held, however, that it was arbitrary and capricious in the absence of language rejecting the make-whole rule with clarity and specificity as ultimately determined by the reviewing court not to apply the default since the language of the Plan failed to establish its priority over any partial recovery.

Thus, none of the cases cited indicate how the arbitrary and capricious standard is affected by applying the state law rule that contracts are construed against the drafter. We note that this Circuit, in *McMahan v. New England Mutual Life Ins. Co.*, 888 F.2d 426 (6th Cir.1989), held that the plaintiff's state law claim for breach of contract—and, therefore, Kentucky's rule of interpreting ambiguous provisions against the drafter—was preempted by ERISA. "We think it clear that subjecting an ERISA fiduciary to the vagaries of state contract law regarding its benefits decisions would create the very real prospect that the fiduciary's administrative scheme would be subject to conflicting requirements in various states. . . . Accordingly, we reject plaintiffs' first argument and hold that the state law claim in this case was within reach of the preemption clause." *Id.* at 429.

However, since there are two bases on which the Plan administrator relied in denying coverage and there is no ambiguity as to one, we need not decide the effect to give to the dicta in the cited cases. The Benefit Description of the Plan clearly states that the accident and health coverage is "non-occupational and any reference to 'illness' or 'injury' . . . means only a non-occupational illness or injury. . . . Non–Occupational Injury is one which is an accidental bodily injury and does not arise out of (or in the course of) any work for pay or profit, nor in any way results from an injury which does." J.A. 144.

There can be no dispute but that Mr. Mitchell's claim is for an occupational injury. Deference must be given to the Plan's construction of the unambiguous definition of coverage.

■ Turning to the Mitchells' second argument, we agree that this court must take into account that DCI has an inherent conflict of interest. The Supreme Court

has stated unequivocally that such conflicts must be taken into account in determining whether an administrator's decision was arbitrary or capricious. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948 ("Of course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighted as a 'facto[r] in determining whether there is an abuse of discretion.' "). It bears emphasis, however, that this simply means the court takes the conflict into account when determining whether the decision was arbitrary or capricious; the Plan is still entitled to that standard of review, contrary to plaintiffs' assertions. *See Killian,* 152 F.3d at 521.

▮ The Mitchells' last argument is somewhat puzzling. They claim DCI's decision is not entitled to the arbitrary and capricious standard of review because they believe DCI's attorneys provided Hagewood's rationale for denying the claim. While they cite numerous cases which they claim support this proposition, the cases cited deal with the attorney-client privilege—holding that it does not exist when an attorney advises the Plan about claims because the attorney is acting for the benefit of the employer. This is in essence another conflict of interest argument. The district court did not see how this creates a conflict of interest. Neither do we.

### B.

Further, were we reviewing the denial of benefits de novo, we would reach the same conclusion. The Non–Occupational provision makes clear that coverage does not extend to occupational injuries. The Non–Occupational provision explicitly notes that the benefits provided for in the Plan relate only to injuries that occur while the beneficiary is not working for pay or profit.

### III.

For the foregoing reasons, we affirm the district court's grant of summary judgment.