Stanley MUSE, et al., Plaintiffs,

v.

**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS HEALTH AND WELFARE AND PENSION FUNDS,** Defendant.

Case No. C–3–01–92.

United States District Court,
S.D. Ohio,
Western Division.

Oct. 23, 2002.

Richard Michael Hunt, Hunt, Skilken & Wehner, Thomas J. Replogle, Gianuglou, Skilken & Replogle, Dayton, OH, for plaintiff.

Francis J. Carey, Des Plaines, IL, David Marvin Cook, Cincinnati, OH, for defendant.

DECISION AND ENTRY SETTING FORTH FINDINGS OF FACT AND CONCLUSIONS OF LAW; DEFENDANT'S MOTION FOR JUDGMENT (DOC. # 12) IS SUSTAINED; PLAINTIFFS' MOTION FOR JUDGMENT (DOC. # 15) IS OVERRULED; JUDGMENT TO BE ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFFS; TERMINATION ENTRY

RICE, Chief Judge.

This matter comes before the Court upon Plaintiffs' appeal from Defendant's denial of medical coverage for Theresa Muse under an ERISA plan. The parties have filed cross-motions for judgment, each recognizing that summary judgment is an inappropriate mechanism for resolving a challenge to a Plan Administrator's denial of ERISA plan benefits. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609

(6th Cir.1998). Given that the Court is unable to conduct an evidentiary hearing or a bench trial in this matter, the Court will render a decision, based on its review of the record before the Plan Administrator. Having conducted such a review, the Court concludes that, for the reasons set forth more fully below, the Plan Administrator did not act in an arbitrary and capricious manner. Consequently, Plaintiff Theresa Muse is not entitled to medical coverage under the ERISA plan.

## I. *Factual Background*

The Central States Southeast & Southwest Area's Pension, Health and Welfare Fund ("Central States" or "the Plan") is an ERISA employee benefit plan, governed by 29 U.S.C. § 1001 et seq., and is administered by a Board of Trustees. The Plan provides, *inter alia*, medical benefits to covered participants and their covered dependents who work in the Teamster Industry. Plaintiff Stanley Muse ("Muse" or "Plaintiff") became eligible for benefits under the Plan on August 8, 1999.

Plaintiff Theresa Muse ("Theresa"), Muse's daughter, was born on September 30, 1969. She suffers from spastic cerebral palsy, and is restricted to a wheelchair. Theresa is incapable of independent financial self-support, and she is totally dependent upon her father for support and maintenance. At the time that Stanley Muse became eligible for benefits under the plan, Theresa was twenty-nine years old.

Muse has stated that he was initially told by a Plan representative that Theresa would be eligible for benefits. On February 9, 2000, Plaintiff was informed that his daughter did not qualify for the Plan. The Trustees indicated that Theresa was ineligible for coverage, pursuant to Article III, section 3.31 [now section 3.27] of the Plan, because she was over age nineteen when Muse became a Covered Participant. Plaintiff appealed this determination. The Level II Claim Appeal Committee met on May 31, 2000, and it denied the appeal, again on the ground that Theresa had to be a "Covered Dependent" prior to age nineteen. Plaintiff was advised of this finding by correspondence, dated June 7, 2000. Plaintiff appealed to the Level III Claim Appeal Committee. On September 13, 2000, that Committee affirmed the denial of coverage on the same basis.

## II. *Standard of Review*

▮ As a means of analysis, the Court first must determine the proper standard of review to apply to the Trustees' denial of Muse's request for coverage for his daughter, Theresa. It is well settled that a plan administrator's denial of benefits should be reviewed *de novo*, unless the plan gives the administrator discretionary authority to determine a claimant's eligibility for benefits. *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir.1996). In the present case, Article IV, Section 17 of the Trust Agreement provides, in pertinent part, that the Trustees, by majority action, are empowered

> to construe the provisions of this Agreement and the terms and regulations of the Health and Welfare Plan; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees, and Employers. The Trustees are vested with discretionary and final authority in construing plan documents of the Health and Welfare Fund.

(Doc. # 12, Ex. A, Art. IV § 17). Article V, entitled Controversies and Disputes, further provides, in pertinent part:

> All questions or controversies, of whatsoever character, arising in any manner or between any parties or persons in

connection with the Fund or the operation thereof, whether as to any claim for any benefits preferred by any participant, beneficiary, or any other person, or whether as to the construction of the language or meaning of the rules and regulations adopted by the Trustees or of this instrument, or as to any writing, decision, instrument or accounts in connection with the operation of the Trust Fund or otherwise, shall be submitted to the Trustees, or to a committee of Trustees, and the decision of the Trustees or of such committee thereof shall be binding upon all persons dealing with the Fund or claiming any benefit thereunder. The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by participants and beneficiaries of the Fund and including Trustee decisions construing plan documents of the Fund. To the extent this section is contrary or inconsistent with any agreement between the Fund and an investment manager, this section shall be inapplicable.

(Doc. # 12, Ex. A, Art. V § 2). The 1999 Plan documents likewise grant the Trustees broad discretionary power. Article VIII, section 3 provides, in pertinent part:

All decisions by the Trustees, including all rules and regulations adopted by the Trustees, all amendments of the Trust Agreement and this Plan by the Trustees and all interpretations by the Trustees of any of said documents shall be binding upon all parties to the Trust Agreement, the Union, each Employer, all individuals claiming benefits pursuant to the Plan or any amendment thereof and all other individuals engaging in any transaction with the Fund. The Trustees are vested with discretionary and final authority in making all such decisions, including Trustee decisions upon claims for benefits by Covered Participants, Covered Dependents and other claimants, and including Trustee decisions interpreting plan documents of the Fund.

(Doc. # 12, Ex. C § 8.03).

■■■ This language clearly and unambiguously vests the Trustees with discretion to interpret the Plan documents and to determine eligibility for benefits. Therefore, the Court must apply "the highly deferential arbitrary and capricious standard" when reviewing the denial of Muse's claim. *Yeager*, 88 F.3d at 380. This standard "is the least demanding form of judicial review. . . . When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Perry v. United Food & Commercial Workers Dist. Unions 405 & 442*, 64 F.3d 238, 242 (6th Cir.1995) (internal quotations and citations omitted).

Plaintiffs argue that the arbitrary and capricious standard of review should be tempered by two circumstances existing herein. *First*, they assert that the majority of the Trustees is comprised either of employers who contribute to the fund or employees of the fund itself, thus creating a conflict of interest. *Second*, they argue that, to the extent that the Plan's language is susceptible to more than one interpretation, the Court should apply the rule of *contra proferentum* and construe the ambiguities against the drafting party, *i.e.*, Defendant.

■■■ Beginning with Plaintiffs' first argument, the presence of a conflict of interest does not warrant abandoning the arbitrary and capricious standard. *Borda v. Hardy, Lewis, Pollard & Page, P.C.*, 138 F.3d 1062, 1069 (6th Cir.1998). Rather, the Sixth Court has stated that when plan trustees are acting under a conflict of interest, "the abuse of discretion or arbitrary and capricious standard still applies,

but application of the standard should be shaped by the circumstances of the inherent conflict of interest." *Id.* In other words, the possible conflict of interest should be taken into account as a factor in determining whether the Trustee's decision was arbitrary and capricious. *University Hosp. of Cleveland v. Emerson Elec. Co.,* 202 F.3d 839, 842 (6th Cir.2000). This requirement applies, however, only where there is "significant evidence" that the insurer was motivated by self-interest. *Peruzzi v. Summa Medical Plan,* 137 F.3d 431, 433 (6th Cir.1998); *Wages v. Sandler O'Neill & Partners, L.P.,* 37 Fed.Appx. 108, 2002 WL 339221 (6th Cir.2002).

■ There is no evidence, let alone significant evidence, herein that the Trustees were acting under a conflict of interest, that they were motivated by self-interest, when they denied coverage to Theresa. Plaintiffs merely state in their Memorandum, without evidentiary support, that "the Board is comprised either of employers who contribute to the fund or employees of the fund itself." (Doc. # 12 at 4). "Mere allegations of the existence of a structural conflict of interest are not enough to show that the denial of a claim was arbitrary; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits." *Peruzzi,* 137 F.3d at 433.

Upon review of the administrative record and Defendant's affidavit, the Court finds no evidence of either a conflict of interest or that any alleged conflict affected the decision to deny benefits. Cf. *Mitchell v. Dialysis Clinic, Inc.,* 18 Fed. Appx. 349, 2001 WL 1006291, *3–4 (6th Cir.2001) (conflict of interest existed where the employer was the administrator of a self-funded ERISA plan). Defendant is a not-for-profit Taft–Hartley Trust, and there simply is no profit motive involved.

The fact that the Trustees may have considered financial ramifications to the Plan assets when interpreting the plan does not create a conflict of interest. Moreover, the Board of Trustees is comprised of representatives of labor and management equally, thus alleviating the bias found where a single employer administers its self-funded plan. *See Hasty v. Central States, Southeast & Southwest Areas Health and Welfare Fund,* 851 F.Supp. 1250, 1257 (N.D.Ind.1994) (finding that Central States did not operate under a conflict of interest in administering C–6 Health Benefits Plan). Accordingly, the Court will not adjust its application of the arbitrary and capricious standard on this basis.

■ *Second,* Plaintiffs have argued that the Court must apply the principle of *contra proferentum* as part of its standard of review. In support of that assertion, they cite to *Perez v. Aetna Life Ins. Co.,* 150 F.3d 550 (6th Cir.1998), and *University Hosp. of Cleveland, supra.* Both cases indicate that this principle should temper a court's arbitrary and capricious review of an ERISA plan. In a recent unpublished opinion, the Sixth Circuit discussed these two cases, suggesting that the *contra proferentum* doctrine is generally not applicable to ERISA plan interpretation. It stated:

As the parenthetical notes, the court in *University Hospitals* attributes the application of the rule of interpretation [*contra proferentum*] to the *Perez* court. When we examine *Perez,* we see that the court was not talking about applying the principal to "temper" the arbitrary and capricious standard. Rather, the *Perez* court was interpreting the provision that was alleged to grant that discretion—the principal issue in the case. *See Perez v. Aetna Life Ins. Co.,* 150 F.3d 550, 557 n. 7 (6th Cir.1998)

(en banc). It was in that context that the court said it was possible to apply the state rule of interpretation. *See id.* ("Because the only reasonable interpretation of the Plan concludes that it vests discretion in Aetna to make benefit determinations, Perez's *contra proferentum* argument lacks merit.") (emphasis added).

The Perez court cites a footnote in an earlier case, *Schachner v. Blue Cross & Blue Shield of Ohio*, 77 F.3d 889, 895 n. 6 (6th Cir.1996), when describing how "[t]he rule of *contra proferentum* provides that ambiguous contract provisions in ERISA-governed insurance contracts should be construed against the drafting party." *Perez*, 150 F.3d at 557 n. 7. But that language does not hold that the Perez court was suggesting that the rule of interpretation is to be used in ERISA cases when the standard of review is arbitrary and capricious. And indeed when one reads *Schachner* one realizes that the Perez court was likely just citing it for descriptive purposes rather than suggesting that it was the rule in this Circuit. For *Schachner* does nothing more than state in a footnote that the court need not address the issue of whether the rule of interpretation applies in ERISA cases. "Since we hold that the phrase [in the Plan] is not ambiguous, however, we need not consider" the arguments regarding the applicability of *contra proferentum*. *Schachner*, 77 F.3d at 895 n. 6. Indeed, the court does not even purport to be reviewing the administrator's decision; rather, it makes clear it is applying a *de novo* standard of review to the contract. *See id.* at 893.

*University Hospitals*, while it states (citing *Perez* (*Id.* at 846)) it will construe any ambiguities against the drafter when applying the "arbitrary and capricious" standard, makes no further reference to that principle in its analysis and holding that the Plan administrator's construction of the Plan was arbitrary and capricious and that the only reasonable construction of the Plan was that asserted by the plaintiff. * * * *

Thus, none of the cases cited indicate how the arbitrary and capricious standard is affected by applying the state law rule that contracts are construed against the drafter. We note that this Circuit, in *McMahan v. New England Mutual Life Ins. Co.*, 888 F.2d 426 (6th Cir.1989), held that the plaintiff's state law claim for breach of contract—and, therefore, Kentucky's rule of interpreting ambiguous provisions against the drafter—was preempted by ERISA. "We think it clear that subjecting an ERISA fiduciary to the vagaries of state contract law regarding its benefits decisions would create the very real prospect that the fiduciary's administrative scheme would be subject to conflicting requirements in various states.... Accordingly, we reject plaintiffs' first argument and hold that the state law claim in this case was within reach of the preemption clause." *Id.* at 429.

*Mitchell*, 18 Fed.Appx. 349, 2001 WL 1006291, *3–4. Although the *Mitchell* court ultimately chose not to decide the effect to give to the dicta in the above-referenced cases, it clearly suggested that the use of the *contra proferentum* doctrine should be limited to determining whether a plan grants the administrator discretion or to situations where the standard of review is *de novo*. *See also Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2d Cir. 1995) (application of the rule of *contra proferentum* is limited to those occasions in which this Court reviews an ERISA plan *de novo* ). Because the Court is applying an arbitrary and capricious standard of review herein, the Court concludes

that the *contra proferentum* doctrine does not apply.[1] Accordingly, the Court concludes that it must apply an arbitrary and capricious standard, untempered by conflict of interest (assuming, *arguendo*, that same exists) or the doctrine of *contra proferentum*.

### III. *Analysis*

■ Having determined the standard of review, the issue before the Court is whether the Central States Trustees acted arbitrarily and capriciously when they interpreted the Plan documents so as to require Theresa to have been a Covered Dependent prior to becoming nineteen years of age, resulting in the denial of coverage for her. Defendant has provided the Court with a copy of the administrative record available to it on September 13, 2000, when it made the final decision on Muse's appeal for coverage for his daughter. At the time that Muse first requested coverage for his daughter, the Plan was governed by a Plan document, revised in 1987. Muse's Level I and Level II appeals were considered under that document. In 1999, the Plan was revised, effective November 17, 1999, and the Level III review was conducted using the 1999 document. In his Motion, Plaintiff cites to the 1999 Plan document only, stating that he became a member of the Plan in August of 1999, and the reviews were conducted following the 1999 revision. Because the ultimate denial of Plaintiff's claim was made pursuant to the 1999 document, the Court likewise will refer to that version only.[2]

The Court begins by setting forth the relevant provisions.

Section 1.06 of the 1999 Plan defines a child as:

> A Participant's natural child, adopted child, step-child; a child placed with a Participant for adoption; or a child for whom the Participant is obligated to provide support pursuant to a Qualified Medical Child Support Order.... The term "child" shall not include a child who is married, or who has been legally adopted and who is no longer dependent upon a participant for support, and shall not include any child who is not dependent upon the Participant for support other than the coverage provided by this Plan, unless that child is a beneficiary under a Qualified Medical Child Support Order under federal law.

(Doc. # 12, Ex. C § 1.06). Under section 3.02, a dependent is considered a "Covered Dependent" when the person upon whom she is dependent is considered a Covered Participant. (*Id.* § 3.02).

> A child of a Covered Participant shall be a Covered Dependent and shall participate in and have Coverage under this Plan on the date such status as Child begins or on the date the Participant becomes a Covered Participant, whichever occurs later.

(*Id.* § 3.26)

Article III, section 3–27 of the 1999 Plan addresses coverage for disabled children. It provides, in pertinent part:

---

**1.** The Court states no opinion whether the doctrine of *contra proferentum* should apply, even when the standard of review is arbitrary and capricious, if there is a conflict of interest. *See Vann v. National Rural Elec. Cooperative Assoc. Retirement & Security Program*, 978 F.Supp. 1025, 1042 (M.D.Ala.1997) ("even under heightened arbitrary and capricious review [due to a conflict of interest], *contra proferentum* is not the last word, but

merely establishes that the fiduciary has to dispel the taint of the conflict of interest if the claimant proposes a reasonable interpretation of the plan.").

**2.** Upon review of the 1987 Plan (Doc. # 12, Ex. B), there appears to be no substantive difference between that Plan and the revised 1999 version (Doc. # 12, Ex. C).

A Covered Participant's unmarried Child who is incapable of independent financial self-support because of mental retardation or a permanent physical handicap and who is dependent on the Covered Participant for support and maintenance, shall remain a Covered Dependent or be eligible to receive benefits (except the Life Insurance Benefit) beyond attaining nineteen (19) years of age subject to the following conditions:

(a) The Child must not have reached nineteen (19) years of age on or before March 1, 1968.

(b) If the Child reached nineteen (19) years of age after March 1, 1968, the Fund may, at its discretion, require that a certification, signed by a licensed Physician and stating that the Child is mentally retarded or permanently physically handicapped, accompany each claim.

(c) In no case will the Child be a Covered Dependent or be eligible to receive benefits unless the mental retardation or permanent physical handicap is sustained prior to the Child's nineteenth (19th) birthday and the Child's Disability has been continuous.

(d) A Child meeting the requirements of this Section may be employed and maintain his accident and health benefits under this Plan, provided he is not covered by any Other Plan.

Section 3.30 of the 1999 Plan addresses loss of coverage for dependents. Of relevance to the present parties, it provides that "a Covered Dependent shall lose his Coverage on the earliest of the dates below: ... (f) Subject to the provisions of Sections 3.27 [disabled child] and 3.29 [unmarried child who is a student between the ages of 19 and 23], on the last day of the week a Child reaches nineteen (19) years of age." (*Id.* § 3.30(f)).

Central States interprets the above-quoted language to provide that Theresa must have been nineteen years old prior to Muse becoming a Covered Participant in order for her to be covered. They stated that Theresa's coverage could not begin before Muse obtained coverage in August of 1999. A child's coverage generally ceases upon reaching the age of nineteen. Thus, a child cannot obtain initial coverage after that age. Defendant states that Theresa was twenty-nine years old in August of 1999, thus precluding her from being able to obtain coverage as a dependent child. Central States asserts that section 3.27 provides that coverage may be *extended* beyond age nineteen, but it does not provide for the initiation of coverage for an adult child. Defendant further argues that Plaintiffs' interpretation would defy actuarial soundness and would jeopardize Plan assets for others who are entitled to coverage.

Plaintiffs respond that the above-quoted language clearly provides that an "unmarried child" who is unable to support herself due to mental or physical disability shall remain or *be eligible to receive benefits* if certain conditions are met, namely (1) she is under the age of nineteen on or before March 1, 1968; (2) the Plan may require documentation; and (3) the disability must have been sustained prior to the nineteenth birthday. (Doc. # 15 at 6)(emphasis in original). They assert that the language indicates that a child who is already a Covered Dependent may remain so after reaching the age of nineteen, or the "child" may otherwise obtain benefits if the enumerated preconditions are met. Plaintiff notes that section 3.02 does not establish an age limitation for a Covered Dependent, and that, so long as the three enumerated conditions are met, an adult disabled child may obtain coverage under section 3.27. Plaintiffs argue that Defendant has rewrit-

ten, not interpreted, the Plan when it required Theresa to have become a Covered Dependent prior to reaching the age of nineteen.

Upon review of the terms of the Plan, the Court finds that Defendant's interpretation of the Plan is reasonable. Although the definition of "child" (§ 1.06) does not state that a Covered child must be under the age of nineteen, section 3.30 provides that coverage for dependents normally will terminate upon reaching that age. A reading of these provisions together leads to a reasonable interpretation that a child must be under the age of nineteen at the time she becomes a Covered Dependent.

The Plan further provides that termination at the age of nineteen is subject to the provisions in section 3.27. As stated, *supra*, Plaintiffs emphasize that section 3.27 provides that an "unmarried child" who is unable to support herself due to mental or physical disability shall remain or *be eligible to receive benefits* if certain conditions are met. They argue that, because section 1.06 does not limit coverage to minor children, the "be eligible to receive benefits" language indicates that benefits may be initially obtained after turning nineteen years old. The Plan language does not *require* such an interpretation. Rather, it is a reasonable interpretation, in light of section 3.30, that the phrase "be eligible to receive benefits" means that a child, *who was a Covered Dependent prior to turning age nineteen,* could obtain benefits sought after turning age nineteen, provided that she met the enumerated conditions. In other words, the Court also finds Plaintiffs' interpretation to be a reasonable one, although not the only reasonable one. Applying the arbitrary and capricious standard of review, the Court must affirm the Trustees' interpretation of the Plan if that interpretation is reasonable, even if the Trustees'

interpretation will lead to a harsh result. *Johnson v. Eaton Corp.,* 970 F.2d 1569, 1574 (6th Cir.1992). That is the case herein. Because Defendant's reading of the Plan provisions was reasonable, the Court cannot say that its denial of coverage for Theresa, who was twenty-nine years old at the time Muse became a Covered Participant, was arbitrary and capricious.

For the foregoing reasons, Defendant's Motion for Judgment (Doc. # 12) is SUSTAINED. Plaintiffs' Motion for Judgment (Doc. # 15) is OVERRULED.

Judgment is to be entered in favor of Defendant and against Plaintiffs.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.